IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL DOUGHERTY, | : | CIVIL ACTION - LAW |
| Plaintiff | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | NO. 1:04-cv-01682-YK |
| | : | (Judge Kane) |
| CIBER, INC., | : | (Electronically filed) |
| Defendant | : | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

STROKOFF & COWDEN, P.C.
Elliot A. Strokoff, Esq.
I.D. No. 16677
Timothy E. Gilsbach, Esq.
I.D. No. 92855
132 State Street
PO Box 11903
Harrisburg, PA  17108-1903
(717) 233-5353
Attorneys for Plaintiff
Carol Dougherty

# TABLE OF CONTENTS

Table of Authorities ...................................  ii

Counterstatement of Facts..............................  1

Issues Presented.......................................  6

Argument...............................................  7

    I.    THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE
        REGARDING MS. DOUGHERTY'S FLSA RETALIATION CLAIM
        WHICH DENY THE DEFENDANT THE RIGHT TO SUMMARY
        JUDGMENT......................................  7

        A.    PLAINTIFF HAS MADE OUT A PRIMA FACIE CASE
              OF RETALIATORY DISCHARGE UNDER THE FLSA....  7

        B.    THERE ARE MATERIAL FACTS IN DISPUTE AS TO
              WHETHER CIBER'S PROFFERED REASON FOR
              TERMINATING MS. DOUGHERTY ARE PRETEXTUAL...  12

    II.    THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE
        RELATING TO MS. DOUGHERTY'S DISCHARGE IN
        VIOLATION OF PUBLIC POLICY CLAIM, WHICH DENY
        DEFENDANT THE RIGHT TO SUMMARY JUDGMENT........  15

        A.    MS DOUGHERTY HAS ESTABLISHED A COGNIZABLE
              CAUSE OF ACTION FOR DISCHARGE IN VIOLATION
              OF PUBLIC POLICY IN THIS CASE..............  15

        B.    THERE ARE MATERIAL ISSUES OF FACT AS TO
              WHY MS. DOUGHERTY WAS TERMINATED..........  17

Conclusion.............................................  18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Brock v. Richardson, 812 F.2d 121 (3rd Cir. 1987) ......... 11, 12

Burrus v. United Telephone Company of Kansas, Inc., 683
F.2d 343 (10th Cir. 1982) ...................................11
10

Chipollini v. Spencer Gifts, Inc., 814 F. 2d 893 (3rd Cir.
1987)..................................................... 13

Conner v. Schnuck Market, Inc., 121 F3d 1390 (10th Cir. 1997) ..11

Florida Kaclik v. SSPC, 124 Fed. Appx. 707 (3rd Cir. 2005) . 8, 9

Harris v. Mercy Healthcare Corp., No. 97-7802, 2000 U.S. Dist.
Lexis 11228 (E.D. Pa. 2000)...................................7

Jackson v. Birmingham Board of Education, 125 S. Ct. 1497 (2005)
..........................................................9

Jalil v. Avdel Corp., 873 F. 2d 701 (3rd Cir. 1989) ..........13

Morgan v. Future Ford Sales, 830 F. Supp. 807 (D.Del. 1993) ...11

Strickland v. MICA Information Systems, 800 F. Supp. 1320
(M.D.N.C. 1992) ....................................10, 12, 13

Wittenberger v. Wheels, Inc., 963 F. Supp. 654
(N.D. Ill. 1997)..............................................11

## STATE CASES

Bauer v. Pottsville Area Emergency Medical Services, Inc., 758
A.2d 1265 (Pa. Super. 2000)................................... 7

Geary v. Unites States Steel Corp., 319 A.2d 174
(Pa. 1974)..................................................17

Spierling v. First American Home Health Services, Inc., 737 A.2d
1250 (Pa. Super. 1999) ...................................16, 17

**STATUTES**

29 U.S.C. §215(a)(3) ...........................................16

I.    __COUNTERSTATEMENT OF FACTS__.

Ms. Dougherty was hired on September 27, 1999, to work as the office manager for CIBER, Inc.'s Harrisburg office.  (Def.'s SMF, Par. 1).  During Mr. Dougherty's tenure as office manager, she received commendable work appraisals. (Def.'s SMF, Ex.'s 4-6). Mr. Frock, CIBER's Director of Delivery (Frock Dep. p. 3) and one of Ms. Dougherty's co-workers, described her performance in this role as follows:

> "Carol was one of the most active people in our office in terms of leading our administrative team to a high level of accuracy and efficiency.  She set quality standards for the team and for the business that improved our competency, our proficiency and our accuracy."

(Frock Dep. p. 46).  Discussing Ms. Dougherty's work ethic, Ms. Griffiths, CIBER's Regional Vice President and Ms. Dougherty's direct supervisor (Griffith's Dep. p. 4-5), remarked, regarding Ms. Dougherty's work ethic, that "no one in your position ever in the previous 18 years has asked for more work." (Def.'s SMF, Ex. 6).

In January of 2003, Ms. Dougherty was promoted to the position of manager of Human Resources.  (Gring Dep. p. 9; Giffiths Dep. p. 5).  This was a new job position at CIBER's Harrisburg office.  (Griffiths Dep. p. 41).

On September 16, 2003, Ms. Griffiths met with Ms. Dougherty

for the annual review of her job performance.  (Def.'s SMF Par.

25).  Prior to this meeting, Ms. Griffiths had solicited

feedback on Ms. Dougherty's performance from other managers in

the office and other employees.  (Def.'s SMF, Par. 19).  This

feedback included some negative feedback about Ms. Dougherty's

performance.  (Def.'s SMF, Par. 20-23). Ms. Griffiths, who

worked with Ms. Dougherty regularly and interacted with her

several times a week, was surprised by this negative feedback.

(Def.'s SMF Ex. 18; Griffiths Dep. p. 4-6; Dougherty Aff. par.

5).  Mr. Gring, one of the managers who provided some of the

negative feedback, nevertheless described Ms. Dougherty's

performance as satisfactory and explained that most of the

complaints he saw about her performance were no different from

that which he would expect to have about other peers.  (Gring

Dep. p. 13, 28).  Mr. Gring also testified that he believed that

much of the criticism of Ms. Dougherty's performance was

attributable to the fact that most people in the Harrisburg

office did not understand what Ms. Dougherty's duties were in

her new position.  (Gring Dep. p. 28-29). In addition, Ms.

Griffiths evaluated Ms. Dougherty's performance as "proficient."

(Griffiths Dep. p. 42).

At the meeting to discuss Ms. Dougherty's performance, Ms.

Griffiths brought up the surprising to her negative feedback she

had received.  (Griffiths Dep. p. 26).  Griffiths and Dougherty
discussed ways to deal with the negative feedback.  (Id.) Ms.
Dougherty even asked Ms. Griffiths if the negative feedback was
serious enough for Ms. Dougherty to go on a performance
improvement plan.  (Dougherty Dep. p. 204).  Ms. Griffiths
responded, "No. We're not there yet."  (Dougherty Dep. p. 204;
Dougherty Aff. par. 9).

On October 3, 2003, Ms. Griffiths prepared an evaluation
that stated Ms. Dougherty's strengths and weaknesses in her
current position. (Def.'s SMF Ex. 19).[1]  In this evaluation, Ms.
Griffiths stated, with regard to Ms. Dougherty's weaknesses, "I
feel you are capable of fixing all of the above."  (Id.).  In
addition, Ms. Griffiths explained in this evaluation, "I value
you as a team member and look forward to your ongoing
contributions." (Id.).  Ms. Griffiths gave Ms. Dougherty a
performance rating of "proficient" which is defined as
"[p]erformance meets position requirements."  (Id.).  On the
same day that the evaluation was issued, Ms. Dougherty also
received a raise.  (Griffith's Dep. Ex. 8).

There is no allegation in the record of any deficiencies of
Ms. Dougherty's performance between the date of this evaluation,
October 3, 2003, and the date of Ms. Dougherty's termination,

---

[1] All of the previous evaluations that Ms. Dougherty has received also
noted areas of improvement as part of the process. (See Def.'s SMF Ex. 4;
Def.'s SMF Ex. 5; Def.'s SMF Ex. 6).

October 24, 2003, other than Griffiths' disputed allegation that
Ms. Dougherty was not prepared for CIBER's strategic planning
meeting on October 23, 2003.  Ms. Dougherty was in the office
for only five (5) days between her evaluation on October 3,
2003, and the date she was terminated due, to the fact that she
was out of the office on vacation, as well as attending a two
day work related seminar, that addressed issues related to the
FLSA.  (Griffiths Dep. p. 24; Dougherty Dep. p. 165-67, 254).

On October 20 and 21, Ms. Dougherty was sent to a
conference on employment law issues, including the FLSA.
(Dougherty Dep. p. 166, 269).  She went to this conference at
the instruction of her employer.  (Id.). During the portion of
the seminar on the FLSA, Ms. Dougherty asked a number of
questions that related to CIBER's payroll system. (Dougherty
Dep. p. 178-79). At the end of the presentation, the presenter,
who was an attorney, asked to speak to Ms. Dougherty because of
the questions she had asked during the presentation. (Id.).  The
attorney who did the presentation asked Ms. Dougherty to
describe CIBER's payroll system.  (Id.).  When she had done so,
the attorney shook his head and said you need to call that --
you need to bring that to the attention of your supervisor.
(Id.).
On October 23, 2003, Ms. Dougherty, Ms. Griffiths, Mr. Gring,

Mr. Frock, Ms. Heistand and Mr. Burns attended a meeting to discuss CIBER's 2004 strategic plan for its Harrisburg office. (Griffiths Dep. Ex. 3). This meeting was part of the ongoing process to develop the strategic plan for calander year 2004, a process which that had involved previous meetings and would involve future meetings as well as future drafts of the plan. (Dougherty Dep. p. 286, 365; Gring Dep. p. 31, 34-35; Frock Dep. p. 15-16; Griffiths Dep. Ex. 3).

It is undisputed that at the October 23, 2003 meeting, in addition to discussing the strategic plan, Ms. Dougherty also raised the issue of whether CIBER  might be in violation of the FLSA because of the way it classified its employees for purposes of overtime. (Gring Dep. p. 30-31; Dougherty Dep. p. 176; Frock Dep. p. 24).[2]  After this issue was raised by Ms. Dougherty, there was a clear change in Ms. Griffiths' facial expression. (Frock Dep. p. 29; Dougherty Dep. p. 208; Dougherty Aff. par. 8). Ms. Dougherty explained that Ms. Griffiths looked surprised and through her body language clearly indicated this was a topic not to be discussed. (Id.). Ms. Dougherty explained there were problems with the payroll system that CIBER was using as it related to overtime. (Dougherty Dep. 178). Ms. Griffiths avoiding discussing the issue, stated that Ms. Dougherty should

---

[2] Although Ms. Griffiths claims she does not remember this conversation, she did not dispute that it occurred and in fact testified that this conversation, in all likelihood, did occur. (Griffiths Dep. p. 16).

bring this issue up with Ciber's Vice President of Human Resources, and Ms. Griffiths moved on to discuss other issues. (Frock Dep. p. 26; Dougherty Dep. p. 178-79).

This strategic planning meeting lasted the rest of the October 23, 2003 workday. (Dougherty Aff. par. 2). The very next morning after this meeting, Ms. Griffiths went to talk with Ms. Dougherty. (Griffiths Dep. p. 26). What was said at this meeting is in dispute. (See Griffiths Dep. p. 26; Dougherty Dep. p. 198). But, Ms. Griffiths terminated Ms. Dougherty on the morning of October 24, 2003, less than 24 hours after Ms. Dougherty raised the issue of CIBER's violations of the FLSA. (Def.'s SMF par. 17).


**II.    ISSUES PRESENTED.**

**1.    ARE THERE MATERIAL ISSUES OF FACT IN DISPUTE REGARDING MS. DOUGHERTY'S RETALIATORY DISCHARGE CLAIM UNDER THE FLSA?**

**2.    ARE THERE MATERIAL ISSUES OF FACT IN DISPUTE REGARDING MS. DOUGHERTY'S DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM?**

III.  **ARGUMENT.**

I.    **THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE REGARDING MS. DOUGHERTY'S FLSA RETALIATION CLAIM WHICH DENY THE DEFENDANT THE RIGHT TO SUMMARY JUDGMENT.**

    A.    **PLAINTIFF HAS MADE OUT A PRIMA FACIE CASE OF RETALIATORY DISCHARGE UNDER THE FLSA.**

In order to make out a prima facie case of retaliation under the FLSA, Plaintiff must show (1) that she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link between the protected activity and the adverse action.  See Harris v. Mercy Healthcare Corp., No. 97-7802, 2000 U.S. Dist. LEXIS 11228 at *23(E.D. Pa. 2000); Bauer v. Pottsville Area Emergency Medical Services, Inc., 758 A.2d 1265, 1271 (Pa. Super. 2000).  Plaintiff has met her burden of proving a prima facie case.

First, Plaintiff has proven that she engaged in a protected activity by voicing concern over possible FLSA violations to her supervisor, as well as other members of CIBER's senior management team.  While this issue was addressed at length in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), which is incorporated as if fully set forth herein,[3] Plaintiff wishes to

---

[3] In Plaintiff's previous brief, she argued that she engaged in a protected act because (1) while exempt from other portions of the FLSA, administrative employees are not listed as an exception to the retaliation protection provision (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Pursuant to F.R.C.P. 12(b)(6) at 2-4), (2) the Third Circuit Court of Appeals has interpreted the FLSA in a liberal manner, (Id. at 4-6), and (3) case law that requires an employee to step out of their role as an employee to be protected

7

bring to the court's attention some more recent developments in this area of the law and to respond to Defendant's arguments on this issue.

Defendant's reliance upon <u>Florida-Kaclik v. SSPC</u>, 124 Fed. App. to 707(3rd Cir. 2005) is misplaced.  A review of the facts of <u>Florida-Kaclik</u> reveals that the plaintiff did not file a Complaint to her employer about anything related to wages and hours covered by the FLSA.  <u>Id.</u> at 708.  Rather, the plaintiff complained to her employer about fumes from cleaning products being used in her work space and was later terminated for failing to come to work.  <u>Id.</u>[4]  In addition, the plaintiff in <u>Florida-Kalik</u> was employed as a market specialist and not a human resource manager. <u>Id.</u>  Accordingly, unlike Ms. Dougherty, it was not Ms. Florida-Kalik's job to ensure that her employer was complying with the FLSA.  Therefore, <u>Florida-Kaclik</u>, rather than standing for the proposition that complaints to an employer about violations of the FLSA by a Human Resource employee are not a protected activity, stands for the proposition that complaining to an employer about a non-wage or hour issue, e.g., cleaning supply fumes, is not a protected activity under the FLSA.  Accordingly, because the current case involves a

---

is inconsistent with the Third Circuit's interpretation of the FLSA. (<u>Id.</u> at 6-8).

[4] <u>Florida - Kaclik</u> involved a <u>*pro se*</u> litigant, <u>Id</u>. at 709, which would appear to explain why she cited a claim under the FLSA, which clearly is of no relevance to complaints to one's employer about cleaning supply fumes.

8

complaint about an actual FLSA issue, <u>Florida - Kaclik</u> is not applicable.

Second, although in a different context, the United States Supreme Court has recently found that in order to suffer from retaliation, a person does not need to complain of harm they suffered, but merely complain that the statute is being violated. <u>Jackson v. Birmingham Board of Education</u>, 125 S.Ct. 1497, 1507(2005). The Court reasoned in the context of a Title IX case that "[i]f recipients were permitted to retaliate freely, individuals who witness discrimination would be loathe to report it, and all manner of Title IX violations might go unremedied as a result." <u>Id.</u> at 1508. In the current context, the same principles should apply. Those who report FLSA violations, even if they themselves have suffered no harm, should be protected from retaliation in order to encourage reports of violations and in order to insure that violations do not go unremedied. This is especially true in cases where, as in the current case, it was the person whose job it was to ensure the company's compliance with the FLSA who was retaliated against. Defendant's argument begs that question that if Ms. Dougherty, whose job it was to ensure compliance with the FLSA and who CIBER sent to a seminar that was in part about the FLSA, is not protected, than who is? If Ms. Dougherty is not

protected in her position as manager of human resources, then managers of human resources would be loathe to report violations of the FLSA, and CIBER's employees would continue to suffer from violations the FLSA.

Finally, Mr. Plisko himself implied that Ms. Dougherty had engaged in a protected activity.  Mr. Plisko stated in his affidavit that he would not have retaliated against Ms. Dougherty if she had reported the FLSA violation to him. (Def.'s SMF Ex. 25).  Through this statement, Mr. Plisko implies that terminating Ms. Dougherty for reporting the FLSA violations would be retaliation, making the reporting a protected activity. Therefore, Ms. Dougherty engaged in a protected act under the FLSA.

There is no dispute among the parties that Ms. Dougherty suffered the adverse employment action of termination.

Third, Plaintiff has proven a causal link between her complaints about potential overtime violations and her termination.  It is well established that "[a] causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Strickland v. MICA Information Systems, 800 F. Supp. 1320, 1323 – 24 (M.D.N.C. 1992) (termination two days after employer learned of protected

activity shows causation) (emphasis added) <u>citing</u> <u>Burrus v.</u>
<u>United Telephone Company of Kansas, Inc.</u>, 683 F.2d 343 (10th
Circuit 1982), <u>see also</u> <u>Wittenberg v. Wheels, Inc.</u>, 963 F. Supp.
654, 662 (N.D. Ill. 1997), (termination after weeks of protected
activities shows causation); <u>Brock v. Richardson</u>, 12 F. 2d 121,
123 (3rd Cir. 1987) (holding that District Court's finding that
employee's termination three days after employer learned of
protected activity showed causation was not clearly erroneous);
<u>Morgan v. Future Ford Sales</u>, 830 F. Supp. 807, 813 (D. Del.
1993) (a short amount of time between protected activity and
termination can show causation); <u>Connor v. Schnuck Market, Inc.</u>,
121 F. 3d 1390, 1395 (10th Cir. 1997) (while requiring additional
evidence to prove causation due to four month lag between
protected activity and termination, the closeness in time helped
to show causation).

       In the present case, Ms. Dougherty complained of possible
violations of the FLSA and discussed them.  Ms. Dougherty
brought this issue up at a strategic planning meeting on October
23, 2003, which lasted the remainder of that day.  The next
morning, Ms. Dougherty had a meeting with Ms. Griffiths, where
Ms. Dougherty was terminated.  CIBER terminated Ms. Dougherty as
quickly as possible after she made comments about possible FLSA
violations. She was terminated so quickly that she could not

even report these violations to Mr. Plisko, which Ms. Griffiths had told Ms. Dougherty to do when Ms. Griffiths curtailed the discussion of this issue at the October 23, 2003 meeting. Therefore, Ms. Dougherty has proven a causal link between her termination and her engagement in a protected activity by the closeness in time between the two.

Accordingly, because Plaintiff has made out a prima facie case by showing (1) she engaged in a protected activity by reporting potential FLSA violations to her supervisor, (2) suffered an adverse action in that she was terminated, and (3) proved a causal link between her protected activity and her termination through the closeness in time of these two events, Defendant's Motion for Summary Judgment should be denied.

**B.   THERE ARE MATERIAL FACTS IN DISPUTE AS TO WHETHER CIBER'S PROFFERED REASON FOR TERMINATING MS. DOUGHERTY ARE PRETEXTUAL.**

Once a plaintiff makes out her burden of proof, the burden shifts to the employer to show a legitimate non-discriminatory reason for the adverse employment action. Strickland, supra, at 1323 see also Brock v. Richardson, supra, at 123. n.1 (using Title VII burden shifting in FLSA retaliation cases). Once the defendant-employer provides a legitimate non-discriminatory reason for the employment action, the Plaintiff can still recover if she can prove that the given reason is merely

12

pretextual.  Id. A plaintiff may overcome summary judgment "by
producing evidence 'that the proffered reason is subject to
factual dispute.'"  Id. citing Chipollini v. Spencer Gifts,
Inc., 814 F.2d 893, 899 (3rd Cir. 1987); Jalil v. Avdel Corp.,
873 F.2d 701, 707 (3rd Cir. 1989).  In the present case, there is
ample evidence of record to show disputes regarding CIBER's
proffered reason for terminating Ms. Dougherty.

Defendant's proffered reason for terminating Ms. Dougherty
was that Ms Griffiths, "found Ms. Dougherty's explanation for
her lack of preparation at the strategic planning session the
preceding day to be unsatisfactory." (Def.'s SMF Ex. 20).
However, Ms. Dougherty testified that she did not have a reason
for being unprepared for this meeting because she was prepared.
(Dougherty Dep. p. 198).  Therefore, there is an issue of
material fact as to whether Ms. Dougherty was prepared for this
meeting.  There are the following disputes Ms. Dougherty's
preparedness for this meeting:

1. Ms. Dougherty and Ms. Gring testified that Ms. Dougherty
   was prepared for this meeting, (Gring Dep. p. 15; Dougherty
   Dep. p. 365, 289), while Ms. Griffiths, and only Ms.
   Griffiths, claims Ms. Dougherty was not. (Griffiths Dep. p.
   29-30 see also Def.'s SMF Ex. 22 (affidavit by Ms.
   Heistand, which did not indicate that Ms. Dougherty was not
   prepared); Frock Dep. (no indication from Mr. Frock that
   Ms. Dougherty was not prepared for this meeting)).

2. Perhaps more telling, after this meeting, Mr. Frock
   specifically discussed Ms. Dougherty's performance with Ms.
   Griffiths (Frock Dep. p. 33-34). The issue of non-
   preparation for this meeting on the part of Ms. Dougherty
   did not even come up.  (Id.).  If Ms. Dougherty's lack of

13

preparation for this meeting was egregious enough to justify termination, common sense says this would have come up during this conversation.

3. Ms. Griffiths' claims that Ms. Dougherty was unprepared because she brought nothing to the strategic planning meeting in the way of a handout but was expected to do so, (Dougherty Dep. p. 30), while Ms. Dougherty and Mr. Gring testified this was not an uncommon practice to not have handouts and not a requirement to have one. (Dougherty Dep. p. 253-54, 259; Gring Dep. p. 25).[5]

4. Ms. Dougherty claims that she emailed and delivered a hard copy of the strategic plan she had prepared to Ms. Griffiths, (Dougherty Dep. p. 252-53), which Ms. Griffiths denies but can't prove due to CIBER's own action of cleaning off Ms. Dougherty's computer. (Griffiths Dep. p. 34-35, 56).[6]

5. Ms. Griffiths claims that Ms. Dougherty admitted she was not prepared for this meeting, (Griffiths Dep. p. 26), while Ms. Dougherty denies making such an admission. (Dougherty Dep. p. 198).

It is undisputed that Ms. Dougherty raised FLSA issues at this meeting and that Ms. Griffiths had a visible response to the statement and successfully moved the meeting to another subject. The combination of these factual disputes along with

---

[5] Interestingly, CIBER is a computer company in an industry whose mantra is to encourage the use of electronics and eliminate the use of paper. Ms. Griffiths assertion that all attendees of the meeting were expected to have handouts at this meeting, would appear to run contrary to the culture of CIBER's industry.

[6] In response to Plaintiff's request to inspect Ms. Dougherty's old computer for evidence of the e-mailing of this report to Ms. Griffiths, CIBER indicated that it had cleaned off Ms. Dougherty's old computer and did not save any of the files as part of its standard operating procedures. However, this would appear to be nonsensical and raise suspensions that a company, especially a computer company, would destroy all of the information on a former employee's computer without retaining any copies of it. This is especially true in a case where the employee was terminated, making the possibility of litigation after the employee's departure likely and need to retain this information more urgent. Accordingly, CIBER's claim that the failure to find this email helps to show it was never sent is suspect at best and is not an undisputed fact.

the closeness in time between the protected activity and termination raises issues of fact and credibility for a jury to determine.  In addition, that fact that Ms. Dougherty had received positive reviews in the past, was told she would not need to go on a performance improvement plan and was given a raise, raise suspicions that Ms. Dougherty's performance was not the reason she was terminated. Specifically, a jury must determine whether Ms. Dougherty was terminated for a valid reason, a failure to be prepared for this meeting, or for an improper reason, complaining about FLSA violations.

Accordingly, because Ms. Dougherty has made out a prima facie case and there are issues of material fact in dispute as to the proffered reasons for her termination, summary judgment of Ms. Dougherty's FLSA retaliation claim is not proper.

**II.  THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE RELATING TO MS. DOUGHERTY'S DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM, WHICH DENY DEFENDANT THE RIGHT TO SUMMARY JUDGMENT.**

**A.  MS DOUGHERTY HAS ESTABLISHED A COGNIZABLE CAUSE OF ACTION FOR DISCHARGE IN VIOLATION OF PUBLIC POLICY IN THIS CASE.**

It is preliminarily noted that Ms. Dougherty responded to Defendant's argument in this regard at length in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Count II Pursuant to Federal Rule of Civil Procedure 12(b)(6), which is

15

incorporated as if fully set forth herein.[7]

In addition to the legal arguments set out in Plaintiff's prior brief, it is appropriate to respond to the Defendant's mischaracterization of the law.  Defendant's reliance upon Spierling v. First American Home Health Services, Inc., 737 A.2d 1250 (Pa. Super. 1999), is misplaced because it is distinguishable from the current case in a number of ways. First, there was no statutory bar to terminating employees out of retaliation in Spierling, but there is such a statutory bar in the present case.  See 29 U.S.C. §215(a)(3).  Second, Spierling involved the reporting of long past stale possible violations of the law as a result of Spierling's investigating fraud claims. 737 A.2d at 1254 n.5.  The court in Spierling implied that if the plaintiff has been investigating current fraud issues, she might have had a claim.  See 737 A.2d at 1254. In the current case, the reported violation involves ongoing and future violations of the law.  Finally, the court found that the plaintiff in Spierling was not doing her job because it was

---

[7] In that brief, Plaintiff argued that she had stated a cognizable claim of discharge in violation of public policy for the following reasons: (1)this honorable court can only dismiss this claim if it find that the Pennsylvania Supreme Court would find that no cause of action exists, (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Count II Pursuant to F.R.C.P. 12(b)(6) at 4-5), (2) the Pennsylvania Supreme Court would not find that no claim exists because reporting violations of overtime requirements is a violation of both Federal and Pennsylvania public policy and Pennsylvania courts have recognized that when a person is doing his or her job, as Ms. Dougherty was, in furtherance of a public policy, there is a cause of action for discharging the employee for reporting violations, (Id. at 5-10), and (3)even if this court should dismiss count I, relating to FLSA retaliatory discharge, count II, relating to discharge in violation of public policy is not preempted. (Id. at 10-12).

simply not her job to investigate old stale claims for fraud. In this regard, Spierling is like Geary v. United Steel Corp., 319 A.2d 174, 180 (Pa. 1974), where the court also found no protection under a discharge in violation of public policy claim because the employee was not performing the duties of his job. In the case at bar, Ms. Dougherty was performing her job as a human resource manager to make sure that CIBER is complying with employment laws, including the FLSA.  However, when she found a violation of the FLSA, she reported it to her supervisor and is terminated.  Accordingly, unlike Geary or Spierling Ms. Dougherty was performing the duties of her job in furtherance of both a Federal and Pennsylvania public policy.  Therefore, Spierling is distinguishable from the case at bar.  Accordingly, for the reasons explained above and in Plaintiff's previous brief, Ms. Dougherty has established a cognizable claim for discharge in violation of public policy.

**B.    THERE ARE MATERIAL ISSUES OF FACT AS TO WHY MS. DOUGHERTY WAS TERMINATED.**

As explained in detail above, there is ample evidence of record that shows a factual dispute as to the true reason for Ms. Dougherty's termination.  These disputes show that it is doubtful Ms. Dougherty was terminated for the reason alleged by Ms. Griffiths, but the weight of the evidence is that Ms.

17

Dougherty was fired in violation of public policy, reporting violations of the FLSA.  Therefore, there are material issues of fact in dispute that need to be determined by a jury, i.e., why was Ms. Dougherty fired.  Accordingly, because Ms. Dougherty has made out a cognizable claim for discharge in violation of public policy and there are disputes as to the factual reasons that Ms. Dougherty was terminated, summary judgment is not appropriate and therefore should be denied.

## IV.  <u>CONCLUSION</u>

For the reasons detailed in this Brief, summary judgment is not proper and, therefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

By: <u> s/Elliot A. Strokoff_</u>
STROKOFF & COWDEN, P.C.

Date: June 24, 2005        Elliot A. Strokoff, Esq.
I.D. No. 16677
Timothy E. Gilsbach, Esq.
I.D. No. 92855
132 State Street
PO Box 11903
Harrisburg, PA  17108-1903
(717) 233-5353
Attorneys for Plaintiff
Carol Dougherty

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CAROL DOUGHERTY,                  : CIVIL ACTION - LAW
          Plaintiff         : JURY TRIAL DEMANDED
                         :
      v.                        : NO. 1:04-cv-01682-YK
                         : (Judge Kane)
CIBER, INC.,                      : (Electronically filed)
          Defendant         :

_____

**CERTIFICATE OF SERVICE**

_____

       I, the undersigned, certify that I have this day served

a true and correct copy of the foregoing electronically and by

first class mail, postage prepaid, on the following person(s):

        Robert Tribeck, Esquire        **rtribeck@rhoads-sinon.com**
        Rhoads & Sinon, LLP
        1 South Market Square
        Harrisburg, PA  17101


Dated: June 24, 2005       By:__s/Elliot A. Strokoff_____
                                Elliot A. Strokoff