## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL DOUGHERTY, | : | Case No. 1:04CV1682 |
| Plaintiff | : | |
| | : | Judge Kane |
| v. | : | |
| | : | |
| CIBER, INC., | : | |
| Defendant | : | FILED ELECTRONICALLY |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, CIBER, Inc., ("CIBER") files this Reply Brief in response to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. CIBER has submitted a Brief in Support of Motion for Summary Judgment that demonstrates that Plaintiff did not engage in any protected activity under the Fair Labor Standards Act, 29 U.S.C. §215(a)(3) ("FLSA"), has failed to state a cause of action under state law, and was terminated based on her poor work performance.[1]

---

[1] CIBER has also previously filed two separate Motions to Dismiss, which are pending before the Court, and that demonstrate that Plaintiff's Amended Complaint fails to state any cause of action for which relief can be granted.

In response, Plaintiff filed a Brief in Opposition to Defendant's Motion for Summary Judgment (cited as "Pl. Br."), a Counter-Statement of Material Facts and a supporting Appendix. Plaintiff maintains that she has established a prima facie claim for FLSA retaliation, has established a cognizable cause of action for discharge in violation of public policy, and that there exist genuine issues of material fact as to whether CIBER's proffered reason for terminating Plaintiff was pretextual. As demonstrated below, all three of Plaintiff's arguments fail, and CIBER's Motion for Summary Judgment should be granted.

**A.     Plaintiff Has Not Established a Prima Facie Claim of Retaliatory Discharge Because There Is No Evidence That She Engaged In A "Protected Activity"**

Plaintiff asserts that, as part of her prima facie claim of retaliatory discharge, she "has proven that she engaged in a protected activity by voicing concern over possible FLSA violations to her supervisor, as well as other members of CIBER's senior management team." [Pl. Br. at 7]. In its Motion to Dismiss Count I, which is currently pending, Defendant established as a matter of law that such conduct is not "protected activity" under the FLSA. However, in opposition to the instant Motion for Summary Judgment, Plaintiff has advanced three new arguments in relation to the issue of "protected activity" prong. First, Plaintiff maintains that the recent Third Circuit opinion in Florida-Kaclik v. SSPC, 205 U.S. App. LEXIS 242 (3d Cir. 2005), relied upon by CIBER, is not relevant to the present litigation.

Second, Plaintiff contends that a recent Supreme Court decision, <u>Jackson v. Birmingham Board of Education,</u> 125 S.Ct.. 1497, 1507 (2005), supports Plaintiff's interpretation of the FLSA.  Finally, Plaintiff maintains that an affidavit of David Plisko, CIBER's corporate director of Human Resources, "implies" that Plaintiff engaged in protected activity.  All three arguments are without merit.

First, Plaintiff's misinterpretation of the Third Circuit's decision in <u>Florida-Kaclik v. SSPC,</u> shows a continued misunderstanding of "protected activity" in the context of a retaliatory discharge claim.  CIBER has not relied upon <u>Florida-Kaclik</u> as factually analogous to the present action.  Rather, <u>Florida-Kaclik</u> is applicable here because the Third Circuit clearly confirmed that in order to state a legally cognizable claim for retaliation under the FLSA, a plaintiff participate in a "protected activity,"   meaning that the plaintiff "was involved in any FLSA proceeding or engaged in any other activity protected by the FLSA." <u>Id</u>. at p. 6.

In this case, there are no allegations or evidence that Plaintiff "was involved in any FLSA proceeding." <u>Id</u>.  Therefore, Plaintiff must show she was "engaged in any other activity protected by the FLSA." <u>Id</u>.  No such showing has been made. Plaintiff continues to maintain, without any legal support, that a "protected activity" is alleged "because the current case involves a complaint about an actual

FLSA issue." [Pl.'s Br. at 8-9].  Raising a complaint about an FLSA issue, given

Plaintiff's role as Human Resources Manager, is not a "protected activity."[2]

Plaintiff's second argument, that the retaliation claim is supported by

Jackson v. Birmingham Board of Education, 125 S.Ct.. 1497, 1507 (2005), also

fails.  Jackson addressed "protected activity" with regard to a retaliation claim

brought pursuant Title IX of Education Amendment of 1972 ("Title IX").  The

Supreme Court never addressed the FLSA or in anyway applied the holding of

Jackson to any statute other than Title IX.

CIBER has not argued that Plaintiff, in her capacity as Human Resources

manager, could never be protected under the FLSA.  Rather, CIBER maintains that

Plaintiff's actions did not rise to the level of a "protected activity" because she did

not file any written or formal complaint, did not call any governmental agency,

and, most significantly, did not complain about FLSA violations that directly  or

indirectly affected her, nor pursue claims on behalf of other employees.  Plaintiff

fails to provide any legal basis for the Court to hold that an isolated comment

regarding FLSA compliance as it related to others, made in the capacity of a

Human Resources manager, rises to the level of a "protected activity."  In fact, the

---

[2] To the contrary, the undisputed evidence of record shows that Plaintiff did not
"step outside her role of representing the company," or take any "adverse action to
the company," and, as a result, did not engage in a protected activity. McKenzie v.
Renberg's, Inc. 94 F.3d 1478, 1486 (10th Cir. 1996).

law is directly contrary. <u>McKenzie</u>, 94 F.3rd at 1486; <u>Nicolaou v. Horizon Media, Inc.</u>, No. 01 Civ. 0785, 2003 U.S. Dist. LEXIS 16706 (S.D.N.Y. Sept. 23, 2003), (attached to Defendant's First Motion to Dismiss as Ex. "C").

Finally, Plaintiff's assertion that David Plisko's Affidavit "implies" that she engaged in "protected activity" is incorrect.  Mr. Plisko stated that, "[u]nder no circumstances would I have retaliated against [Plaintiff] in any way for raising concerns about FLSA compliance or overtime classifications."  (CIBER's Statement of Undisputed Materials Facts ("SMF"), ¶ 60).  It is wholly inaccurate that this statement "implies that terminating [Plaintiff] for reporting the FLSA violations would be retaliation" making the reporting a "protected activity."  [Pl. Br. at 10].  The statement is not a legal interpretation of the FLSA as Plaintiff portends.  To the contrary, Mr. Plisko expressly qualified his statement by noting that "[a]ny such retaliation is clearly prohibited by CIBER policies," not by the FLSA or any other statute.  (SMF, ¶ 60).  Plaintiff's tortured interpretation of Mr. Plisko's affidavit must be disregarded.

There simply cannot be any dispute that Plaintiff did not engage in "protected activity" under the FLSA and, thus, Plaintiff has failed to establish a

prima facie claim for retaliatory discharge under the FLSA.[3]   Accordingly, summary judgment must be entered in favor of CIBER.

**B.    Plaintiff Has Failed To Establish A Cause Of Action For A Violation of Public Policy**

Plaintiff has also presented new legal arguments which allegedly undermine CIBER's contention that the public policy cause of action alleged by Plaintiff does not exist under Pennsylvania law and would be pre-empted by federal law in any event.   Again, arguments regarding this issue were addressed at length in submissions made by the parties in relation to CIBER's second Motion to Dismiss. Put simply, no such cause of action exists for such a claim under well-established Pennsylvania law. As discussed at length in Defendant's Brief in Support of its second Motion to Dismiss, the public policy exceptions to the "at-will" employment doctrine fall into only three categories: "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from

---

[3] Having failed to establish the first prong, the Court need not address Plaintiff's contentions regarding the third prong of a retaliatory discharge claim regarding "a causal link between her complaints about potential overtime violations and her termination." [Pl. Br. at 10]. However, it should be noted that Plaintiff attempts to establish a causal connection by pointing to the temporal proximity between the strategic planning meeting and her termination. [Pl. Br. at 10-11]. The Third Circuit, however, has been extremely reluctant to rely solely on temporal proximity to establish retaliatory intent. See, e.g., Delli Santi v. CNA Ins. Co., 88 F.3d 192, 199 n.10 (3d Cir. 1996) ("Timing alone will not suffice to prove retaliatory motive."). The Third Circuit has "stopped short of creating an inference based on timing alone." Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991).

complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." <u>Spierling v. First American Home Health Services, Inc.</u>, 737 A.2d 1250, 1252 (Pa. Super. 1999). Plaintiff's conduct in this action does not fall within any of these categories.

CIBER will not herein reiterate all of the pending arguments in this regard, but it must be noted that Plaintiff has emphasized irrelevant portions of the decision in <u>Spierling v. First American Home Health Svcs, Inc.</u>, 737 A.2d 1250 (Pa. Super. 1999), and has ignored its clear applicability to this case. Plaintiff attempts to distinguish <u>Spierling</u> on the basis that there was no statutory retaliation cause of action in that case; that the <u>Spierling</u> plaintiff there was not investigating current fraudulent conduct; and that the Plaintiff was not doing her job. [Pl. Br. at 16-17].

Plaintiff's emphasis on these facts is irrelevant to the question of whether Plaintiff in this case has a cause of action for a violation of public policy. In <u>Spierling</u> the Plaintiff was under no statutorily imposed duty to report suspected fraud, the defendant did not request that the plaintiff commit a crime, and there was no specific statutory prohibition against the plaintiff's discharge. <u>Id.</u> at 1254.

Here, like <u>Spierling</u>, Plaintiff was not prevented from complying with a statutorily imposed duty, required to commit a crime, or discharged when prohibited from doing so by statute.[4]

The public policy that is actually under attack in the present litigation is the public policy in support of at-will employment, which gives employers an "unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition." <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 696 A.2d 173, 176 (Pa. Super. 1997)(citations omitted), <u>aff'd</u>, 750 A.2d 283 (Pa. 2000).   No viable contractual or statutory prohibition has ever been articulated by Plaintiff in the present matter.   Plaintiff was, without question, employed by CIBER on an "at-will" basis.   (SMF, ¶¶ 2, 4, 14).

Plaintiff has testified about why she decided to file the present lawsuit: "I did not believe that I would deserve to be fired."   (Deposition of Plaintiff, "Pl. Dep." at 209, attached hereto as Ex. "A").   Essentially, Plaintiff decided that her termination was unfair.   This undermines the very concept of "at will" employment.   Plaintiff reached the conclusion that she must have some basis for a

---

[4] As set forth above, Plaintiff's conduct in briefly raising the issue of the FLSA at the strategic planning meeting is not protected activity.   However, even if it did constitute protected activity under the FLSA, CIBER would still be entitled to summary judgment on Count II because Plaintiff's state law claim would be preempted by the FLSA. <u>Jacques v. AZKO Int'l Salt Co.</u>, 619 A.2d 748, 753 (Pa. Super. 1993).

lawsuit despite the knowledge that she had been told by CIBER about performance problems in the past.

As a matter of public policy, a legal climate should not be created in which employers are unable to make legitimate business decisions regarding the continuing employment of employees. Allowing such lawsuits to proceed subverts the very doctrine of "at will " employment under which Ms. Dougherty understood she was working at CIBER.

As set forth above, Pennsylvania law is clear that the public policy exceptions to the at-will employment doctrine are extremely narrow, and no Pennsylvania Court has ever adopted such an exception under facts analogous to this case. Under such circumstances, "it is beyond the authority of a federal court…to create entirely new causes of action." Wolk v. Saks Fifth Ave., Inc., 728 F.2d 221, 223 (3d Cir. 1984) (citing Becker v. Interstate Propr., 569 F.2d 1203, 1206 (3d Cir. 1977)).

## C. There Are No Genuine Issues Of Fact Regarding The Reason For Plaintiff's Termination.

Because Defendants have shown as a matter of law both that Plaintiff did not engage in protected activity under the FLSA and that Plaintiff has no common law cause of action for wrongful discharge, the Court need not even consider Plaintiff's factual assertions. However, even if the Court decides to address Plaintiff's

arguments in regard to genuine issues of material fact, CIBER is still entitled to summary judgment, as Plaintiff fails to set forth any evidence that any factual dispute warrants allowing this case to proceed to a Jury.  Rather, Plaintiff attempts to avoid summary judgment by misstating portions of the record and relying upon irrelevant matters.[5]

### 1.    Plaintiff Misstates the Evidentiary Record

First, Plaintiff misrepresents that the sole reason for her termination was the fact that she was unprepared for the October 23, 2003 strategic planning meeting. [Pl. Br. at 13].  This assertion completely misstates the factual record in this case. CIBER has set forth ample evidence that Plaintiff's lack of preparation for the strategic planning meeting followed a series of performance problems of which Plaintiff was aware. [SMF ¶¶ 20-23, 25-30].  Plaintiff's failure to explain her lack of preparation, or show any remorse for her lack of preparation, was the proverbial "last straw" in Plaintiff's poor performance which resulted in her termination. [SMF at ¶¶61-63, 65, 71].

Plaintiff also misstates deposition testimony of certain witnesses in an attempt to create issues of fact where none exist.  For example, Mr. Gring never testified

---

[5] Plaintiff's assertions of issues of material fact are the same for both Counts I and II, *i.e.*, that she was terminated for voicing her belief that CIBER might be in violation of the FLSA. [Pl. Br. at 12-15, 17-18].  Therefore, CIBER will address the issue concurrently for both Counts I and II.

that Plaintiff was prepared for the strategic planning meeting.  [Pl. Br. at 13].

Instead, Mr. Gring testified:

> Q:    Do you recall whether Ms. Dougherty made a presentation on
>       HR and recruiting that day?
>
> A:    *I do not recall.  I can assume.*  She's on the agenda.  *I don't
>       remember.*
>
> Q:    Do you have any recollection of Ms. Doughterty handing out
>       materials that day?
>
> A:    I do not.
>
> Q:    Do you have any recollection of believing Ms. Dougherty was
>       unprepared that day?
>
> A:    *I do not recall that either.*

Deposition of Phillip Gring, "Gring Dep.," at 15, attached hereto as Ex. "B")

(emphasis added).

Similarly, Mr. Gring did not testify that it was "not an uncommon practice to

not have handouts" for strategic planning sessions.  [Pl. Br. at 14].  To the

contrary, Mr. Gring testified:

> Q:    Okay.  Now, with respect to the strategic planning meetings,
>       was it unusual for one of the participants to participate in the
>       meeting using material that was on their laptop as part of the
>       presentation?
>
> A:    That certainly could have been a method of presenting
>       information.
>
> Q:    That wasn't unusual for these meetings?

A:     ***I would say most of the time there were paper handouts***, but certainly we have used or had used overhead projection and laptops for the discussion perspective.[6]

(Gring Dep., attached hereto as Ex. "B") (emphasis added).

Finally, Plaintiff's assertion that there is "no indication from Mr. Frock that [Plaintiff] was not prepared" for the strategic planning meeting is inaccurate. [Pl. Br. at 13].   Mr. Frock testified that, when it was Plaintiff's turn to give a presentation, "There was no facilitation, there was no conversation, there was no discussion of that area…there was no discussion." [SMF at ¶ 45, Ex. 24].[7]

2.     Plaintiff Relies Upon Irrelevant Matters

In addition to misstating the factual record, Plaintiff highlights certain irrelevant facts as she attempts to create an issue of fact where none exists.  First, the fact that Plaintiff now contends she was prepared for the strategic planning meeting is completely irrelevant to CIBER's decision to terminate her employment.  Plaintiff

---

[6] Plaintiff's attempts to emphasize an alleged paperless "culture of CIBER's industry" [Pl. Br. at 14, n.5] is both unsupported by any evidence of record, and is contrary to the testimony that paper handouts were normally utilized at strategic planning meetings, including by Plaintiff in the past.  [SMF at ¶40].

[7] Plaintiff has utterly failed to cast **any** doubt on the testimony of Ms. Griffiths that her decision to terminate Plaintiff had absolutely nothing to do with Plaintiff's comments regarding potential wage and hours issues. Instead, Plaintiff skirts this issue, hoping the Court will either ignore this critical issue or conclude that, based on timing alone, summary judgment should not granted. That is, however, not the law and Plaintiff has completely failed to carry her burden to avoid summary judgment.

admits that on the date of the meeting, she did not make any presentation at the meeting, and that she did not have written materials prepared for the meeting, despite the fact that she had done so in the past. [SMF at ¶¶39-40, 44-45].

It is also irrelevant that Mr. Frock did not testify that he and Ms. Griffiths discussed Plaintiff's lack of preparation for the meeting. [Pl. Br. at 13-14]. It is undisputed that Mr. Frock testified that Plaintiff did not make a presentation and that he discussed Plaintiff's performance problems with Ms. Griffiths. [SMF at ¶45; Frock Dep. at 32-34, attached hereto as Ex. "C"]. The fact that they did not discuss preparation is immaterial.

Finally, it is completely irrelevant that Plaintiff testified that she e-mailed and delivered a hard copy of her presentation to Ms. Griffiths. [Pl. Br. at 14]. Even if it is true that Plaintiff provided Ms. Griffiths with a presentation, she admits that she did not provide the copies until the day *after* the strategic planning meeting. [SMF at ¶43; Pl. Dep. at 252-53, attached hereto as Ex. "A"].

The sole issue for purposes of the instant motion, assuming Plaintiff engaged in protected activity (which she did not), is whether Plaintiff has come forward with any evidence to cast doubt upon CIBER's proffered reason for terminating her employment. She has completely failed to do so. Instead, Plaintiff has resorted to misstating the record, citing to wholly irrelevant facts, and avoiding the critical lack of evidence on her support.

Despite her efforts, a simple fact remains: Plaintiff has failed to come forward with even a shred of evidence that casts any doubt at all on Ms. Griffith's proffered reasons for terminating Plaintiff's employment. Essentially, Plaintiff would have this Court deny summary judgment **solely** on the basis that Plaintiff's alleged protected activity occurred close in proximity to her termination. Such fact is, without more, simply insufficient to avoid summary judgment. See supra. n.3.

## IV. CONCLUSION

Plaintiff's claim for retaliatory discharge under the FLSA fails, as a matter of law, because she did not engage in protected activity. However, even if Plaintiff had engaged in protected activity, she has not presented any evidence that casts doubt upon the stated reasons for her termination. Put simply, Plaintiff was terminated for poor performance, which was documented for many months prior to her termination (and prior to her alleged protected activity). The events of October 23 and 24 were simply the last straw in her poor performance. Again, Plainitff has presented no evidence to dispute that poor performance or that such poor performance was the reason for her termination.

Moreover, her claim for violation of "public policy" is not a viable claim under Pennsylvania law and, even if it was a viable claim, it is preempted by the FLSA.

14

Accordingly, for the reasons set forth herein and in CIBER's initial Brief in Support of Motion for Summary Judgment, CIBER respectfully requests that its Motion for Summary Judgment be granted.

<div style="margin-left: 40%;">

Respectfully Submitted,

RHOADS & SINON LLP

By:   /s/ Robert J. Tribeck
Robert J. Tribeck, Esquire
Pa. I.D. No. 74486
One South Market Square, 12th Floor
Harrisburg, PA 17108-1146
(717) 233-5731

</div>

Date: July 19, 2005                    Attorney for Defendant CIBER, Inc.